UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JASWINDER SINGH,

        Petitioner,

        v.

CHRISTOPHER CHESTNUT, et al.,

        Respondents.

No.  1:26-cv-00127 DC SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee representing himself in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

## FACTUAL AND PROCEDURAL HISTORY

### I.    Section 2241 Petition

Petitioner, a native and citizen of India, is currently detained in the California City Immigration Processing Center within this judicial district.  ECF No. 1 at 2, ¶ 1.  Petitioner has been in DHS custody since December 5, 2024, and alleges that he has not been provided a bond hearing before a neutral decisionmaker to determine whether his prolonged detention is justified based on danger or flight risk.  Id. at 5, ¶¶ 19-20.  Petitioner was a lawful permanent resident until his permission expired while he was in the custody of the State of California.  Id., ¶ 23.

Plaintiff maintains he is currently detained pending removal pursuant to 8 U.S.C. 1226(c).

1

As such, the Immigration Court lacks authority to give him a bond hearing to determine whether his prolong detention is justified.  ECF No. 1 at 5, ¶¶ 18, 21.  Petitioner is seeking relief in the Ninth Circuit Court of Appeals from the denial of his application for withholding of removal and the finding that his criminal conviction constitutes an aggravated felony for immigration purposes.  Id., ¶ 18.

The petition's sole claim for relief alleges that petitioner's ongoing, prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.  ECF No. 1 at 16.  By way of relief, petitioner asks the court to determine that his detention is not justified because the government has not established by clear and convincing evidence that he is a risk of flight or danger and to order his release.  Id.  In the alternative, petitioner asks the court to order his release within 21 days unless respondents schedule a hearing before an Immigration Judge ("IJ") where, to continue detention, the government must meet that same threshold.  Id.

## II.    Respondents' Opposition

Respondents filed a brief opposition asserting that petitioner is lawfully detained under § 1226(c) pending removal.  ECF No. 7 at 1.  Respondents note that the Supreme Court upheld mandatory detention under § 1226(c) as facially constitutional in Demore v. Kim, 538 U.S. 510, 531 (2003), and reaffirmed that "immigration detention can be constitutional even in the absence of any showing that an individual detainee posed a flight risk or a danger to the community."  Id. at 2 (citing Demore, 538 U.S. at 523-27).  Respondents conclude that, in short,

> "[T]he Supreme Court [in Demore] recognized [that] there is little question that the civil detention of aliens during removal proceedings can serve a legitimate government purpose, which is 'preventing deportable . . . aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed.'"

Id. (quoting Demore, 538 U.S. at 528 (quoting Prieto-Romero v. Clark, 534 F.3d 1053, 1062-65 (9th Cir. 2008))).

Respondents add that the legitimate governmental purposes served by civil detention do not diminish over time.  ECF No. 7 at 3.  Although the Supreme Court in Demore relied on an understanding that in the majority cases mandatory detention under § 1226(c) lasts for less than 90 days, it also observed that it could run longer, "and nonetheless would remain constitutional,"

where the noncitizen requests continuances of the removal proceedings.  Id. (citing Demore, 538 U.S. at 529, 531 n.15).

**DISCUSSION**

**I.    Applicable Detention Statute**

The statutory and regulatory framework governing immigration detention is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero, 534 F.3d at 1057.  Thus, the undersigned begins by addressing the statutory basis for petitioner's detention.

The parties agree that petitioner remains subject to mandatory detention under 8 U.S.C. § 1226(c).  That provision states that the Attorney General "shall take into custody any [noncitizen] who" falls into one of the enumerated categories involving criminal offenses, § 1226(c)(1)(A)-(E), and specifies that the Attorney General "may release" such a noncitizen "*only* if the Attorney General decides" both that doing so is necessary for witness-protection purposes and that the noncitizen will not pose a danger or flight risk, § 1226(c)(2).  Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original).

The undersigned agrees that § 1226(c) governs.  First, the record reflects that petitioner's order of removal is not administratively final.  Section 1231(a) applies to detention after the entry of a final order of removal and mandates detention during a ninety-day "removal" period only after the conclusion of removal proceedings.  "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit Court of Appeals] stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement."  Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii)).  Respondents attached the BIA's decision dated December 5, 2025, dismissing petitioner's appeal of an IJ's March 19, 2025, decision ordering his removal.  ECF No. 7-1.  Plaintiff appealed the BIA's dismissal to the Ninth Circuit, Singh v. Bondi, Case No. 26-79 (9th Cir. 2026), and the undersigned takes judicial notice of the fact that

the Ninth Circuit both opened the case and issued a temporary stay of removal on January 6, 2026. See Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (a court may take judicial notice of undisputed matters of public record including documents on file in federal or state courts). As the Ninth Circuit has yet to resolve petitioner's appeal, his order of removal is not administratively final and his detention has not shifted from § 1226(c) to § 1231.

Second, the record shows that the BIA affirmed the IJ's determination that petitioner is removable under § 1227(a)(2)(A)(iii)—one of the enumerated categories in § 1226(c)(1)(B)—on account of his 2023 conviction under Cal. Penal Code § 273.5(f) for willful infliction of corporal injury of a protected party after having been convicted of a prior offense within seven years. ECF No. 7-1 at 2. Although petitioner has appealed the ruling that his conviction constitutes an aggravated felony under § 1227(a)(2)(A)(iii) to the Ninth Circuit, ECF No. 1 at 5, ¶ 18, he has not argued in this habeas action that he is not subject to detention under § 1226(c). He accordingly remains detained under § 1226(c) while seeking judicial review of his order of removal. See Avilez, 69 F.4th at 534 (holding that § 1226(c), like § 1226(a), "applies throughout the administrative and judicial phases of removal proceedings").

Having found petitioner is subject to mandatory detention under § 1226(c), the undersigned proceeds to analyze his due process claim.

## II.    Due Process Clause Analysis

### A. As-Applied Framework

The petition raises an as-applied, procedural due process challenge to the constitutionality of petitioner's mandatory detention. See ECF No. 1 at 8-13. Petitioner was initially detained on December 5, 2024, nearly fifteen months ago. ECF No. 1 at 5, ¶ 19. Petitioner alleges, and respondents do not dispute, that petitioner has never received a bond hearing to determine whether his detention is justified based on danger or flight risk. Id., ¶ 20.

As respondents note, the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c) in Demore, 538 U.S. at 531. The Supreme Court did so with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in

which the alien chooses to appeal." Id. at 513, 529 n.12, 530.  Justice Kennedy joined the opinion in full, but wrote a concurring opinion recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring).  Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court recognized the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420.

While observing that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)," the Ninth Circuit has expressly declined to address "[w]hether due process requires a bond hearing" in such situations. Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022), cert. granted, judgment vacated, 144 S. Ct. 1339 (2024).  Indeed, "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." Lopez v. Garland, 631 F. Supp. 3d 870, 877 (E.D. Cal. 2022) (quotation omitted); see also Doe v. Becerra, 732 F. Supp. 3d 1071, 1079 (N.D. Cal. 2024) ("[D]ue process protections do not disappear simply because mandatory detention under Section 1226(c) is at least initially permissible.").  In other words, the Supreme Court's "conclusion [in Demore] that § 1226(c) is constitutional in some of its applications does not mean that the Court 'does not have the power to grant petitions for habeas corpus raising as-applied constitutional challenges to [ ] detention without a bond hearing.'" Carballo v. Andrews, No. 1:25-cv-0978 KES EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025) (quoting Perera v. Jennings, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022)) (emphasis in original).

Other Circuit Courts of Appeal have also concluded that Demore does not foreclose as-applied challenges to prolonged detention under § 1226(c).  Recently, the Second Circuit held

5

that "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary." Black v. Decker, 103 F.4th 133, 145 (2d Cir. 2024). The undersigned finds these authorities persuasive and agrees with petitioner that Demore does not bar an as-applied challenge to his prolonged detention without a hearing to determine whether such detention is justified. The next step is to determine the appropriate framework in which to analyze petitioner's procedural due process arguments.

## B. Legal Standard

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

To determine what process is due here, petitioner urges the court to apply the test from Mathews v. Eldridge, 424 U.S. 319 (1976), or the multi-factor reasonableness test the Third Circuit adopted in German Santos v. Warden Pike County Correctional Facility, 965 F.3d 203 (3d Cir. 2020).[1] ECF No. 1 at 8. Respondents do not identify a preferred test or make any attempt to apply the facts of petitioner's detention to a particular procedural due process framework.

[1] In German Santos, the Third Circuit declined to adopt a presumption of reasonableness or unreasonableness of any duration and instead evaluated duration along with three other factors: (1) whether the detention is likely to continue; (2) the reasons for the delay, such as a detainee's request for continuances; and (3) whether the noncitizen's conditions of confinement are "meaningfully different[ ] " from criminal punishment. 965 F.3d at 211.

6

The undersigned has considered petitioner's options, as well as the various other tests developed by district courts within the Ninth Circuit, and finds that Mathews provides the appropriate test for due process challenges to prolonged detention under § 1226(c).  The undersigned is particularly persuaded by the Second Circuit's reasoning in Black, 103 F.4th at 145-49, that the Mathews test is flexible enough to account for the additional factors identified by the Third Circuit and district courts when deciding whether detention under § 1226(c) has become unreasonably prolonged.

Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

### C. **Mathews Factors**

Private Interest:  An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial."  Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011).  Courts of Appeal have generally declined to adopt a specific threshold for when detention under § 1226(c) becomes prolonged.  See German Santos, 965 F.3d at 211; Black, 103 F.4th at 150; Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021).  While the Ninth Circuit has not addressed this question, it has previously referred to detentions longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them."  Rodriguez Diaz, 53 F.4th at 1207 (citations omitted).  Indeed, numerous courts within the Circuit have found due process violations where the length of mandatory detention without bond was much shorter than the nearly fifteen-month duration at issue here.  See, e.g., Lopez, 631 F. Supp. 3d at 880 (granting request for bond hearing where petitioner was detained under § 1226(c) for one year); Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent"); Sadeqi v. LaRose, No. 25-cv-2587-RSH-BJW, --- F.Supp.3d ----, 2025 WL 3154520, at *3 (S.D. Cal. Nov. 12, 2025) (noting that "examples

abound" of district courts ordering a bond hearing where a petitioner was subject to mandatory detention for about a year and collecting cases).

Moreover, courts hearing as-applied challenges to § 1226(c) detention have also considered the likely duration of future detention. See Lopez, 631 F. Supp. 3d at 880–81 (finding petitioner's administrative appeals and likely appeal to the Ninth Circuit weighed toward granting request for bond hearing). Here, petitioner's nascent appeal to the Ninth Circuit suggests that he "faces an undetermined, but likely significant, period of mandatory detention through the appeals process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025). Accordingly, based on its duration to date without bond and the likelihood of continued mandatory detention during judicial review, the undersigned finds petitioner's detention is sufficiently "prolonged" and confers a substantial private interest.

Respondents do not grapple with the facts of petitioner's detention, but do appear to suggest that he is partly responsible for his own prolonged detention: "The Supreme Court also observed that mandatory detention under § 1226(c) could run longer, and nonetheless remain constitutional, where the noncitizen himself requested continuance of his removal hearing" and "received a continuance to obtain documents relevant to his withholding application[.]" ECF No. 7 at 3 (quoting Demore, 538 U.S. at 531 and n.15). The undersigned is unpersuaded by this argument. For one, the continuance sought in Demore brought the petitioner's confinement under § 1226(c) to six months, far less than the nearly fifteen-month detention at issue here. The Supreme Court held that the six-month detention was only "somewhat" longer than the five-month average duration of detention in cases where the noncitizen chose to appeal and thus rejected any analogy to the "indefinite" and "potentially permanent" detention at issue in Zadvydas. Demore, 538 U.S. at 530-31.

Further, there is no evidence in the record to suggest that petitioner's appeals are frivolous or designed to bolster this habeas petition. The delays here appear to be the result of an overburdened immigration system, as nearly nine months passed between the IJ's order of removal on March 19, 2025, and the BIA's dismissal of petitioner's appeal on December 5, 2025. ECF No. 7-1. Petitioner's substantial private interest here is not diminished by such delays:

8

[A]ppeals and petitions for relief are to be expected as a natural part of the process. A [noncitizen] who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him. Further, although a [noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that a [noncitizen] has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonability.

Ly v. Hansen, 351 F.3d 263 (6th Cir. 2003), abrogated on other grounds by Jennings, 583 U.S. 281; see also German Santos, 965 F.3d at 211 ("[W]e do not hold a[ noncitizen's] good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceeding."). In sum, the undersigned concludes that the first Mathews factor weighs heavily in petitioner's favor.

Risk of Erroneous Deprivation: The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor firmly favors petitioner for several reasons. First, it is undisputed that petitioner has not received a bonding hearing at any point. ECF No. 1 at 5, ¶ 20. "In the absence of any meaningful initial procedural safeguards, it appears to us that almost *any* additional procedural safeguards at some point in the detention would add value." Black, 103 F.4th at 153 (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year detention under § 1226(c)).

Second, in evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory or regulatory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention. See Rodriguez Diaz, 53 F.4th at 1209-10 (finding risk of erroneous deprivation low where the petitioner "was subject to numerous levels of review, each offering [him] the opportunity to be heard by a neutral decisionmaker"). As petitioner notes here, he has "no statutory or regulatory pathway . . . to seek a bond hearing before a neutral

9

decisionmaker."[2]  ECF No. 1 at 5, ¶ 21.  "[T]he almost nonexistent procedural protections in place for section 1226(c) detainees markedly increased the risk of an erroneous deprivation of Petitioners' private liberty interests."  Black, 103 F.4th at 152.

Respondents argue that "Congress could have required that criminal noncitizens be provided individualized bond hearings, instead of requiring mandatory detention," but did not.  ECF No. 7 at 2 (citing Demore, 538 U.S. at 528).  But in the context of the second Mathews factor, courts have held that "congressional rationale for the procedures available pursuant to [§ 1226(c)] does not override petitioner's constitutional right to due process."  Jensen v. Garland, No. 5:21-cv-1195 CAS AFM, 2023 WL 3246522, at *7 (C.D. Cal. May 3, 2023).  Accordingly, the second Mathews factor also weighs toward petitioner.

Government Interest:  Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail."  Mathews, 424 U.S. at 335.  Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens].'"  Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 515).  Higher courts have also recognized that the detention of noncitizens during removal proceedings can also serve the legitimate government purpose of preventing flight.  Prieto-Romero, 534 F.3d at 1065 (citing Demore, 538 U.S. at 528).  Thus, in some general way, the government has an interest in the detention of people held under § 1226(c).

Respondents argue that these interests "do not wane due to the passage of time alone," and that detention of criminal noncitizens pending removal proceedings "remains constitutional where it continues to 'serve its immigration purposes,'" i.e., preventing danger and flight.  ECF No. 7 at 3 (quoting Demore, 538 U.S. at 527).  "[T]he additional procedural safeguards we would allow here under Mathews do nothing to undercut those interests.  At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger

---

[2]  One procedural protection plaintiff could have sought is a hearing pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999), to challenge whether his conviction qualifies as a § 1226(c) offense.  Plaintiff is raising this argument on appeal to the Ninth Circuit, see ECF No. 1 at 5, ¶ 18, but does not raise such arguments here or dispute that he is currently detained under § 1226(c).

to the community, as IJs routinely do for other noncitizen detainees." Black, 103 F.4th at 153–54; see also Jimenez, 2020 WL 510347, at *3 ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal.  After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.") (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)).  In petitioner's case, the government's interest in further detaining him without a hearing to determine whether such detention is justified is minimal.

Administrative burden is a legally cognizable interest under Mathews.  But respondents' interest is further diminished by the low fiscal and administrative burdens associated with a bond hearing.  See D. L.C., 2026 WL 25511, at *5 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, the undersigned finds the final factor tilts toward petitioner.  Having found all three factors favor petitioner, the undersigned will determine the appropriate habeas relief.

**D.  Remedy**

For reasons explained above in the Mathews analysis, the undersigned finds petitioner's alternative request for a bond hearing to be the appropriate relief here.  Petitioner asks that the government bear the burden of "establish[ing] by clear and convincing evidence that [he] presents a risk of flight or danger."  ECF No. 17.

As District Judge Coggins has observed, "[o]ther district courts in the Ninth Circuit that have found prolonged mandatory immigration detention unconstitutional absent a bond hearing have applied the clear and convincing evidence standard, with the government bearing the burden of proof."  Singh v. Albarran, No. 1:26-cv-0940 DC DMC (HC), 2026 WL 392169, at *5 (E.D. Cal. Feb. 12, 2026) (collecting cases).  The undersigned agrees this is the appropriate burden given the liberty interests at stake and recommends that petitioner receive a bond hearing before a neutral adjudicator at which the government bears the burden of showing by clear and convincing evidence that he is either a flight risk or a threat to safety to justify his continued detention.  See Black, 103 F.4th at 157 ("[O]nce detention under section 1226(c) has become so prolonged that due process warrants a bond hearing . . . the government must justify continued detention at such

11

a hearing . . .by clear and convincing evidence.").

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.      Respondents be ordered to provide Petitioner with a bond hearing before an immigration judge at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within fourteen (14) days of issuance of this order.

3.      Respondent be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

4.      If petitioner is granted release on bond, respondents shall return all of petitioner's documents and possessions at the time of release.

5.      Judgement be entered in petitioner's favor and this case closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 2, 2026

_____
SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

12